GEORGE A. STARCEVICH, Plaintiff-Appellant, *v*. THE CITY OF FAR-
MINGTON, Defendant-Appellee.

Third District   No. 82—26

Opinion filed December 13, 1982.

Judith A. Toohill, of Toohill, Toohill & Toohill, of Farmington, for appellant.

Richard E. Stites, of Livingston, Barger, Brandt, Slater & Schroeder, of Bloomington, for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

This is an appeal from an order of the circuit court of Fulton County which dismissed plaintiff's three-count complaint against the City of Farmington, Illinois, a municipal corporation.

The plaintiff, George A. Starcevich, on February 17, 1981, filed a complaint for flood damages to his real estate. The complaint was amended twice; and the second amended complaint, which is the subject of this appeal, sought relief in three counts for negligence, trespass to land and an unconstitutional taking of land for public use. The defendant moved for dismissal on grounds that each count failed to state a cause of action against it. After a hearing on the motion, the trial court allowed defendant's motion and dismissed the complaint with prejudice on grounds that each of plaintiff's counts failed to state a cause of action, and that, even if they did, they would be barred by applicable limitations periods. Upon denial of plaintiff's post-judgment motion, plaintiff filed a timely notice of appeal, thus conferring jurisdiction in this court.

The issues before us require that we reassess the grounds for dismissal as presented to the trial court with reference to the pleadings and relevant law. A rather detailed recitation of the allegations of plaintiff's second amended complaint is necessary. It alleges that plaintiff has owned and occupied land abutting the defendant city since 1955. Access to plaintiff's home and farm buildings was pro-

vided by a gravel driveway extending from a public road to them. At the base of the driveway, there was an 18-inch concrete culvert which permitted surface waters to flow in their natural course of drainage from east to west.

Around 1969 and 1970, the defendant city began removing trees and shrubs and adding fill to a recreational field to eliminate a bowl-effect depression. A large underground culvert line was also installed across the field. According to the complaint, these municipal improvements increased the water on plaintiff's land by diverting the natural flow of surface waters which would not otherwise have reached plaintiff's land. The complaint further recites that the defendant city negligently designed the aforementioned culvert system and that in 1974 during a rainstorm, plaintiff's driveway was washed away as a proximate result of the additional quantity and force of water propelled through the culvert and upon plaintiff's property. Upon plaintiff's request, the city did partially pay for repairs to plaintiff's drive on that occasion. Further developments undertaken by the city after 1974 included annexing 11 acres of land in 1976 on which buildings have been constructed and permitting 14 additional trailers to be set up in a trailer park, both of which allegedly further diminished the land area available for surface drainage; revising the city's sanitary system; and continued filling of the recreational field. The cumulative effect of these improvements, plaintiff alleges, was to increase the amount and force of water propelled through the culvert and over plaintiff's land. As a consequence, in June of 1980, a heavy rainstorm once again washed away plaintiff's driveway. This time, however, the defendant city declined plaintiff's invitation to help him pay for repairs. Plaintiff furnished notice of his injury in accordance with section 8—102 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, par. 8—102), and thereafter proceeded in court with his cause of action for which he seeks $4,120 in damages.

Before proceeding to consideration of the substance of the pleadings we must determine whether the trial court correctly ruled that plaintiff's purported causes of action are time-barred.

The trial court, in a supplemental order of December 17, 1981, stated that sections 15 and 21.3 of the Limitations Act (Ill. Rev. Stat., 1979 Supp., ch. 83, pars. 16, 22.3) barred plaintiff's three causes of action, if such exist. On appeal, plaintiff takes the position that neither the five-year statutory period (Ill. Rev. Stat. 1979, ch. 83, par. 16) nor the two-year statutory period (Ill. Rev. Stat., 1979 Supp., ch. 83, par. 22.3) cited by the trial court apply to a suit, such as this, filed by a

private party against a municipal corporation. Plaintiff suggests that a five-year limitations period should apply since the subject matter of the complaint is essentially concerned with drainage. While directing our attention to section 11—13 of the Illinois Drainage Code (Ill. Rev. Stat. 1979, ch. 42, par. 11—13), plaintiff acknowledges that the statute would appear to apply to suits between formally constituted drainage districts or municipalities rather than, as here, between a private property owner and the drainage district or municipality. Defendant suggests that the appropriate limitations period for this suit is found in section 8—101 of the Local Governmental and Governmental Employees Tort Immunity Act. Ill. Rev. Stat. 1979, ch. 85, par. 8—101.

■ Careful reading of the various statutes convinces us that the appropriate limitations period for this suit is found in the Local Governmental and Governmental Employees Tort Immunity Act. The Act (hereinafter also referred to as Tort Immunity Act), as amended in 1973, provides that "[n]o civil action may be commenced *** against a local entity for any injury unless it is commenced within 2 years from the date that the injury was received or the cause of action accrued." (Ill. Rev. Stat. 1979, ch. 85, par. 8—101.) As between this two-year limitations statute and the five-year limitations period contained in section 15 of the Limitations Act, we find that the oft-cited maxim of statutory construction that a special act prevails over a general act applies so as to resolve any apparent conflict. (*Stanley v. Denning* (1970), 130 Ill. App. 2d 628, 264 N.E.2d 521; 82 C.J.S. *Statutes* sec. 369 (1953).) Furthermore, to the extent that the instant suit is brought against a public entity and the legislature initially enacted the Tort Immunity Act in response to *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, 163 N.E.2d 89 (common law sovereign immunity doctrine held inapplicable to school districts), it is apparent to us that the legislature intended to provide greater protection for a public entity defendant than would be available under the general limitations statute by shortening the period for the filing of claims. See Latturner, *Local Governmental Tort Immunity and Liability in Illinois*, 55 Ill. B.J. 28 (1966).

■ With respect to the plaintiff's suggestion that we should be guided by section 11—13 of the Illinois Drainage Code, we need state simply that plaintiff is entirely correct in his observation that the five-year limitation period there stated applies only to suits brought under article 11 of the Act and is therefore limited to causes of action between drainage districts and/or municipal corporations exercising drainage powers. (Ill. Rev. Stat. 1979, ch. 42, par. 11—1 *et seq.*) The Illinois Drainage Code does not apply to a private suit levied against a

body politic.

■ Having thus determined that plaintiff's causes of action, if they exist, are controlled by a two-year statute of limitations, our next task is to determine when the period began running. The language of the Tort Immunity Act plainly allows for actions to be "commenced within 2 years from the date that the *injury was received.*" (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 85, par. 8—101.) Plaintiff has alleged "receipt of injury" on two specific occasions—in 1974, and, again, in 1980, both during unusually heavy rainstorms. The only act of wrongful conduct or negligence by defendant alleged in the complaint is negligent design of the culvert system. This negligent act preceded the 1974 damage. The defendant city on appeal takes the position that, regardless of which statute of limitations applies, plaintiff's cause of action is barred because it accrued either between 1969 and 1970 or in 1974 when plaintiff had notice of his first injury.

Plaintiff, on the other hand, contends that either the defendant city is estopped from asserting the statute of limitations defense because of its partial payment for the 1974 injury; or the cause of action for the 1980 injury accrued, at the earliest, in 1979 when the sanitary sewer system was being revised.

Although there appears to be a paucity of case law in Illinois specifically addressing the statute-of-limitations issue before us, this precise issue has been the subject of some controversy in foreign jurisdictions. The reported cases have been collected in Annot., 5 A.L.R.2d 302 (1949). There, the cases are grouped into four categories: (1) those which have held that completion of construction by the defendant starts the running of the statutory period; (2) those which hold generally that the statutory period begins to run from the time of injury by overflow; (3) those which hold that plaintiff's entire cause of action accrues from when the injury caused to plaintiff's land is permanent, rather than temporary in nature; and (4) those which hold that separate causes of action accrue and start new periods of limitations at each successive injury by overflow.

We find that the rule in Illinois applicable to the situation herein most accurately falls within the ambits of group 4. Clearly, the statutory period in Illinois does not begin running only at completion of a defendant city's construction.[1] The plain language of the Tort Immu-

---

[1]Certainly on a different set of facts, *e.g.*, if an improvement displays obvious defects upon completion or results in immediate permanent injury to the servient landowner, the limitation period does begin to run upon completion of the improvement. *Wheeler v. Sanitary District* (1915), 270 Ill. 461, 110 N.E. 605.

nity Act permits plaintiff to bring his cause of action within two years of the "injury." In the present case, the plaintiff alleges injuries that did not become apparent upon completion of the municipality's improvements.

Plaintiff's complaint alleges two separate injuries and one negligent act followed by other acts which, although not wrongful in and of themselves, exacerbated the problems caused by the earlier negligent design of the culvert system. Assuming at this point that plaintiff's allegations can be proved, he is the victim of "repeated" injury.

■ Where a tort involves repeated injury, the statute of limitations in Illinois begins to run from the date of the last injury or when the tortious acts cease. (*City of Rock Falls v. Chicago Title & Trust Co.* (1973), 13 Ill. App. 3d 359, 364, 300 N.E.2d 331, 334.) We perceive of no reason to restrict this rule so as to preclude plaintiff's causes of action in the instant case. Rather, we find that the rule is particularly applicable to suits brought under the Tort Immunity Act inasmuch as the Act is in derogation of common law and must be strictly construed against the local public entity. (*Clark v. City of Chicago* (1980), 88 Ill. App. 3d 760, 410 N.E.2d 1025.) Accordingly, we hold that the two-year statute of limitations, for purposes of plaintiff's 1980 injury, began to run on June 2, 1980, the date when plaintiff's driveway was washed away during a rainstorm. As such, plaintiff's suit against the city of Farmington for the 1980 injury is not time-barred.

■ We turn next to the question of whether plaintiff's three counts sufficiently state causes of action. As aforesaid, plaintiff's three counts sound in negligence, intentional trespass and an unconstitutional "taking," respectively. Having considered only the allegations of the complaint, we find that count III was properly dismissed and that counts I and II must be remanded for further proceedings. As defendant correctly asserts, and the trial court correctly ruled, plaintiff's count III must fail because the injuries complained of are neither so frequent nor permanent in nature as to constitute a "taking." (*County of Winnebago v. Kennedy* (1965), 60 Ill. App. 2d 408, 208 N.E.2d 612; see also *Dutton v. City of Crest Hill* (N.D. Ill. 1982), 547 F. Supp. 38.) Rather, it would appear that plaintiff's allegations as contained in counts I and II more properly state a cause of action for money damages.

Counts I and II are premised on defendant's duty, as owner of the dominant estate and of the culvert system allegedly at the heart of plaintiff's injuries, not to so increase the flow of surface waters on plaintiff's land as to be beyond the policy of reasonableness of use.

(*Templeton v. Huss* (1974), 57 Ill. 2d 134, 311 N.E.2d 141.) The city contends that plaintiff's allegations of unreasonableness are not well-pleaded because they fail to allege a duty not to make a change resulting in an "unreasonable use." Defendant's position misconstrues the standard of care expressed in *Templeton*.

■■ ■ The Illinois Supreme Court in *Templeton* defined the correct rule in Illinois respecting suits by landowners for damages resulting from an adjoining landowner's deflection of surface water from his own property onto that of his neighbor. To prevail, the landowner must establish that "the increased flow of surface waters from the land of the defendants to that of the plaintiff *** was beyond a range consistent with the policy of reasonableness of use which led initially to the good-husbandry exception." (*Templeton v. Huss* (1974), 57 Ill. 2d 134, 141, 311 N.E.2d 141, 146.) In our opinion, the "unreasonableness" to be pleaded and proved is not in the defendant's use of the dominant estate, but rather in the *interference* with drainage through natural flow and seepage that defendant's changes cause upon the plaintiff's servient estate. Plaintiff clearly alleges defendant's duty not to unreasonably increase the quantity and force of waters cast upon his land. As we see it, plaintiff thereby sufficiently alleges defendant's duty not to unreasonably interfere with drainage upon his land. Plaintiff further alleges specific changes made on the dominant estate which he alleges constitute breaches of that duty. If those changes resulted in an unreasonable interference, then plaintiff has, in our view, sufficiently pleaded a breach of the standard of care as required by *Templeton*. Having carefully reviewed the plaintiff's second amended complaint, we cannot say that counts I and II are substantially insufficient in their allegations of defendant's duty and the breach thereof. Nor do we find any other basis for dismissing these counts.

Although the defendant city alluded generally to statutory immunities in its motion to dismiss, it does not appear to us that a sufficient basis for raising such immunities exists. Specifically, we do not believe that the crux of plaintiff's complaint is defendant's failure to inspect property (Ill. Rev. Stat. 1979, ch. 85, par. 2—105), or adoption of a design approved by a body exercising discretionary authority to give such approval (Ill. Rev. Stat. 1979, ch. 85, par. 3—103). Nor do we find a factual basis to establish nonliability of any of the defendant city's employees (Ill. Rev. Stat. 1979, ch. 85, par. 2—109) or that a public employee was serving in a position involving the determination of policy or exercise of discretion and as a result of such employee's act plaintiff suffered the injury complained of (Ill. Rev. Stat. 1979, ch.

85, par. 2—201). On the face of the pleadings, we cannot therefore determine that the defendant city will necessarily prevail on the statutory defenses.

In sum, we conclude that the plaintiff's complaint sufficiently alleged causes of action in counts I and II of the complaint; that such causes of action are not barred by the applicable statute of limitations; and that the trial court properly dismissed count III of the complaint for failure to state a cause of action.

Affirmed in part, reversed in part, and remanded.

STOUDER and ALLOY, JJ., concur.