BARBARA C. RASCHER, as Ex'r of the Estate of Emma E. Bialeschki, Deceased, Plaintiff-Appellant, v. THE CITY OF CHAMPAIGN, Defendant-Appellee.

Fourth District    No. 4—93—0855

Argued April 20, 1994.—Opinion filed May 13, 1994.

James D. Cottrell (argued), of Dobbins, Fraker, Tennant, Joy & Perlstein, of Champaign, for appellant.

Howard W. Small (argued), of Thomas, Mamer & Haughey, of Champaign, for appellee.

JUSTICE LUND delivered the opinion of the court:

Plaintiff Barbara Rascher appeals an order of the circuit court of Champaign County dismissing her complaint with prejudice. The complaint alleged negligent inspection of premises where plaintiff's decedent lived by defendant City of Champaign (City). A fire on the premises on April 2, 1992, caused smoke to enter decedent's apartment, resulting in her death. The dismissal was based upon section 2—105 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (Ill. Rev. Stat. 1991, ch. 85, par. 2—105), which immunizes a local public entity from liability arising from a failure to inspect or a negligent inspection of property not belonging to it, for the purpose of determining whether there is a violation of any enactment or if the property is, or contains, a safety or health hazard. We now affirm the trial court's order.

Decedent resided in Skelton Place, which was owned and operated by the Champaign County Housing Authority (Housing Authority). The complaint, sounding in wrongful death and survival, alleged the City had a duty to inspect Skelton Place for life-safety hazards and to exercise reasonable care in doing so. It was further alleged that prior and subsequent to April 2, 1992, the City had carried out such inspections for the purpose of determining the existence of life-safety hazards and advising of same. Plaintiff alleged the City had negligently failed to (1) properly inspect Skelton Place, (2) determine the existence of self-closing doors (allegedly required by "Life-Safety Code Provision 19—36.2"), and/or (3) advise the Housing Authority of an absence of such doors. It was also alleged that on the date of

the fire, and as a consequence of the City's negligence, large quantities of smoke entered decedent's apartment, ultimately causing her death.

The City's motion to dismiss the complaint with prejudice was granted by the trial court, on the basis that section 2—105 of the Act granted the City immunity from liability. The court also denied plaintiff's motion to reconsider or, in the alternative, for leave to file an amended complaint. The proposed amended complaint, in addition to restating the allegations of the original complaint, alleged the City (1) had a duty to warn the Housing Authority of the existence of life-safety hazards and to exercise reasonable care in doing so, (2) had undertaken inspections for this purpose, and (3) had negligently failed to advise the Housing Authority of the absence of self-closing doors at Skelton Place.

Section 2—105 of the Act provides:

"A local public entity is not liable for injury caused by its failure to make an inspection, or by reason of making an inadequate or negligent inspection, of any property, other than its own, to determine whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety." (Ill. Rev. Stat. 1991, ch. 85, par. 2—105.)

Plaintiff argues this section is not a bar to recovery, reasoning that the City may not claim immunity for its negligent inspection because it voluntarily undertook to inspect Skelton Place, thus subjecting itself to liability for a negligent inspection. In support of this argument, she cites various cases dealing with liability for negligent performance of gratuitous acts.

For instance, in *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769, one of the defendants was charged with negligent performance of gratuitous safety inspections and safety engineering service. The case was decided under Florida law, however, which the court held to be controlling (since Florida was the situs of the accident). In addition, the defendant charged with negligence was not a governmental entity or employee, and the question of tort immunity was not involved.

In *Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 412 N.E.2d 472, plaintiff was beaten by several men while waiting for an elevator at a housing project. He filed suit against the housing authority and the alarm service company which had contracted with the housing authority to provide part-time guard services at the project. Plaintiff alleged that by providing guard service from only 9 p.m. to 1 a.m., the danger to tenants and guests after that time increased and the housing authority was aware of that fact. The trial court

dismissed the complaint as to the housing authority, and the appellate court reversed. (*Cross v. Chicago Housing Authority* (1979), 74 Ill. App. 3d 921, 393 N.E.2d 580.) The supreme court held the complaint stated a cause of action against the housing authority since, in providing part-time guard services, it was obligated to use reasonable care to not create increased dangers to persons lawfully on the property. (*Cross*, 82 Ill. 2d at 317, 412 N.E.2d at 474-75.) As with the *Nelson* case cited above, this case did not involve the question of governmental tort immunity and, therefore, lends no support to plaintiff's position.

The same reasoning applies to other cases cited by plaintiff. *Triolo v. Frisella* (1954), 3 Ill. App. 2d 200, 121 N.E.2d 49, involved a suit against individual defendants for negligence in cutting down a tree which fell on an electrical line, killing plaintiff's son. In *Comastro v. Village of Rosemont* (1984), 122 Ill. App. 3d 405, 461 N.E.2d 616, plaintiff was attacked at a rock concert held on property owned by the village which had provided police protection before, during, and after the concert. The trial court granted the village's motion for summary judgment. The appellate court reversed, noting that a municipal corporation engaged in a nongovernmental function will be held to the same standard of care as imposed upon a private citizen.

Plaintiff also argues that since section 2—105 of the Act does not mention a failure to warn, that statute should not be a defense where such a failure is alleged. She cites *Starcevich v. City of Farmington* (1982), 110 Ill. App. 3d 1074, 443 N.E.2d 737, in support of this argument. In that case, plaintiff sued defendant city, alleging it had made certain improvements to its land which caused flooding of plaintiff's land. Defendant filed a motion to dismiss, in which it only generally alluded to statutory immunities. The trial court dismissed the complaint, finding it failed to state a cause of action and, even if it did, the suit was barred by the applicable statute of limitations. In reversing, the appellate court discussed Illinois law with respect to suits for damages resulting from a landowner's deflection of surface waters from his own land to that of a neighbor, as well as the question of limitations. The issue of tort immunity did not enter into the court's decision. While the court touched on the issue, it found no basis for raising any of the immunities, noting that plaintiff had not alleged a failure to inspect property (citing section 2—105 of the Act) in his complaint or any other facts to provide a basis for any of the statutory immunities. (*Starcevich*, 110 Ill. App. 3d at 1080-81, 443 N.E.2d at 741.) It is unclear how the *Starcevich* case supports plaintiff's argument that a failure to warn is somehow not immunized by section 2—105 of the Act.

During oral argument, plaintiff asserted that under the allegations of her complaint, she should be allowed to prove that the City, in the conduct of its inspections, had found certain life-safety hazards but negligently failed to advise the Housing Authority of them. Plaintiff argues that section 2—105 of the Act immunizes the City from the "failure to make an inspection," or "making an inadequate or negligent inspection," but provides no immunity for negligent failure to warn of hazards once discovered. The City maintains that section 2—105 contemplates the possibility that a local public entity choosing to make an inspection might fail to report an alleged hazardous condition once it was discovered, and that this situation is covered by the language of the section. We reject plaintiff's argument. Although there is no case law on this precise question, we believe the City has the better argument here. The inspection process consists of examining the property, determining whether hazards exist, and determining what notice should be given to the appropriate authorities. The determination whether a condition is a hazard cannot be separated from the determination whether a condition is a hazard sufficient to justify a warning. It would be impossible to delineate in the statute each conceivable act of negligence and to specifically immunize each one. We need not consider whether a wilful and wanton failure to advise of a known hazard is subject to immunity. We hold only that negligence, whether in discovering the hazard or giving warning, is subject to the immunity of section 2—105 of the Act.

The trial court's order dismissing plaintiff's complaint with prejudice is affirmed.

Affirmed.

KNECHT and COOK, JJ., concur.