[Nos. 54950-8, 55149-9. En Banc. September 21, 1989.]

CERTIFICATION FROM THE
UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WASHINGTON
IN
MARCEA H. KENWORTHY, ET AL, *Plaintiffs,* v.
PENNSYLVANIA GENERAL INSURANCE COMPANY,
*Defendant.*

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
*Respondent,* v. LYNN D. HOOKS, ET AL,
*Defendants,* JUDITH ANDERSON,
ET AL, *Appellants.*

*Ford, Nees & Nordstrom, P.S.,* by *Stephen L. Nord-strom,* for plaintiffs.

*Marston, Hodgins, Gillingham & Jennings,* by *Halleck H. Hodgins,* for appellants.

*Richard L. Gemson* and *David H. Olwell,* for defendant.

*Harold C. Fosso, Christopher C. Mason,* and *Julin, Fosso, Sage, McBride & Mason,* for respondent.

*Richard B. Kilpatrick, Thomas J. Chambers, Robert H. Whaley,* and *Bryan P. Harnetiaux* on behalf of Washington State Trial Lawyers Association, amici curiae.

*Don M. Gulliford* and *William C. Smart* on behalf of Washington Defense Trial Lawyers Association, amici curiae.

BRACHTENBACH, J.—These consolidated cases concern a single issue, *i.e.,* the validity of a policy provision in underinsured motorist (UIM) coverage which requires the claimant to pay part of the arbitration costs when a question of coverage or amount of recovery goes to arbitration. We hold the arbitration cost provisions to be void as violative of RCW 48.22.030(3).

In the Kenworthy v. Pennsylvania General Insurance Company case, claimant, Marcea Kenworthy, was injured in an automobile accident while driving her daughter's car. Kenworthy made a claim on her daughter's UIM policy, which was denied by Pennsylvania General.

Kenworthy filed a declaratory action in Spokane County Superior Court that was later removed to the United States District Court for the Eastern District of Washington. In the course of the federal action, the parties agreed that the dispute over coverage was subject to arbitration. The insurer had conceded that Kenworthy's injuries were covered under the policy; the parties dispute who should bear the cost of arbitration proceedings.

In the Kenworthy case, the UIM provision of the policy provides in part:

If we and a *covered person* do not agree:
1. Whether that person is legally entitled to recover damages under this part; or
2. As to the amount of damages;

either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will:
  1. Pay the expenses it incurs; and
  2. Bear the expenses of the third arbitrator equally.

General Accident Insurance Personal Auto Policy, at 6.

Kenworthy argued that this provision of the policy violated RCW 48.22.030(3), and was therefore void as against public policy. The District Court certified the following question to this court:

> Does the insurance policy provision requiring insured persons to share in the costs of arbitration under underinsured motorist coverage violate the requirement of RCW 48.22.030(3) that underinsured coverage of an automobile insurance policy shall be in the same amount as the insured's third party liability coverage?

In the State Farm Mutual Automobile Insurance Company v. Hooks and Anderson case, a car driven by Lynn Hooks, in which Judith Anderson was a passenger, was rear-ended by a car driven by Frank Holzberger. Anderson filed suit against Holzberger and simultaneously made a demand on a UIM policy issued by State Farm covering Hooks' car. In the dispute over coverage, Anderson successfully moved to compel arbitration, which has been completed. Anderson then moved to compel State Farm to pay *all* arbitrators' fees for the UIM arbitration. This appeal is from denial of that motion.

In the Hooks and Anderson case, the UIM provision of the policy provides in part:

> Two questions must be decided by agreement between the *insured* and us:
>   (1) Is the *insured* legally entitled to collect damages from the owner or driver of the *underinsured motor vehicle*; and
>   (2) If so, in what amount?
> If there is no agreement, these questions shall be decided by arbitration upon written request of the *insured* or us. Each party shall select a competent and impartial arbitrator. These two shall select a third one. If unable to agree on the third one within 30 days either party may request a judge of a court of record in the county in which the arbitration is pending to

select a third one. The written decision of any two arbitrators shall be binding on each party.

The cost of the arbitrator and any expert witness shall be paid by the party who hired them.

The cost of the third arbitrator and other expenses of arbitration shall be shared equally by both parties.

Clerk's Papers, at 119.

The policy provisions in these consolidated cases lead essentially to the same result: the claimant must pay the cost of the arbitrator that the claimant names, and one–half of the cost of the third arbitrator. The State Farm policy requires sharing of "other expenses of arbitration."

Our analysis necessarily begins with the applicable statute, RCW 48.22.030(3), which mandates UIM coverage "in the same amount as the insured's third party liability coverage . . .".

The statute itself, and its predecessor uninsured motorist statute, does not specifically answer the question posed in these cases. However, we have a long–standing series of cases that compel our conclusion herein. The principles of our cases have not been modified or discarded by the Legislature.

In *Touchette v. Northwestern Mut. Ins. Co.*, 80 Wn.2d 327, 335, 494 P.2d 479 (1972), we expressed the general philosophy that the legislative purpose of UIM coverage, to expand insurance protection for the public while reducing the consequences of risk associated with careless and insolvent drivers, "is not to be eroded or, as the cases say, whittled away by a myriad of legal niceties arising from exclusionary clauses."

We have consistently held that RCW 48.22.030 "is to be liberally construed in order to provide broad protection against financially irresponsible motorists." *Finney v. Farmers Ins. Co.*, 92 Wn.2d 748, 751, 600 P.2d 1272 (1979).

This body of law, which developed under the previous uninsured motorist statute, has been carried over to the interpretation of the underinsured motorist statute. *Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d 518, 530, 707 P.2d 125 (1985).

Over the years we have conscientiously adhered to the inevitable and unassailable interpretation of the purpose of the UIM statute: "[T]o allow an injured party to recover those damages which would have been received had the responsible party maintained liability insurance." *Finney,* at 751; *Keenan v. Industrial Indem. Ins. Co.,* 108 Wn.2d 314, 320, 738 P.2d 270 (1987).

The pertinent question then is whether a policy that shifts the costs of arbitration to the claimant provides the statutorily mandated coverage. Put another way, as the cases hold, is the underinsured claimant recovering those damages that the claimant would have received from an insured responsible party? To pose the question is to answer it. The claimant's recovery from an insured responsible party would not be reduced by any arbitration costs or their equivalent.

Our conclusion finds support in the one case cited by the parties addressing this specific issue. In *Nickla v. Industrial Fire & Cas. Ins. Co.,* 38 Ill. App. 3d 927, 349 N.E.2d 644 (1976), the court considered whether an arbitration provision virtually identical to those at issue here was valid, or whether it violated a statutory requirement of UIM minimum coverage similar to Washington's. The court held the costs provision void:

> It is clear that an insured who is required to settle his uninsured motorist claim through arbitration under the policy issued by defendant . . . must pay the entire fee of the arbitrator that he has selected, plus one-half the fee of the third arbitrator and one-half the costs of the arbitration hearing itself. Read together, the . . . [statutes] mandate that uninsured motorist coverage be at least $10,000/$20,000 exclusive of interest and costs. *Since none of the arbitration fees and costs incurred by an insured are recoverable under the instant policy, the statutorily prescribed uninsured motorist coverage to which an insured is entitled is indirectly diluted.* It is axiomatic that any conflict between the provisions of an insurance policy and a section of the Illinois Insurance Code must be resolved in favor of the statute.

(Italics ours.) *Nickla,* at 931.

The insurers in the instant case advance several arguments to sustain the clause. First, they argue that

arbitration is authorized by RCW 7.04, and that as a matter of contract law the parties can provide for cost shifting. However, there is no doubt that a policy provision cannot contravene the mandate of the statute as judicially interpreted. *Britton v. Safeco Ins. Co. of Am., supra* at 531.

Second, the insurers contend that claimants confuse recovery with coverage. Insurers contend these arbitration costs are analogous to those that a claimant might otherwise incur in effectuating coverage, *e.g.*, attorney fees and costs of experts. The critical and controlling distinction, however, is between those expenses that the claimant voluntarily incurs and those required by the policy in order for the claimant to recover by arbitration. The logical result of the insurers' argument is that so long as gross coverage meets the minimum statutory limit, the policy could require that the claimant cover virtually any cost. This is the very sort of "erosion" and "whittling away" of protection our cases prohibit.

It is readily apparent that this mandatory cost–shifting provision would deny the claimant those damages that would have been received from an insured motorist. An award reduced by costs of arbitration is not equivalent to the damages that the injured person would otherwise receive. Therefore, the requirement that the claimant pay costs of arbitration materially dilutes the coverage mandated by the statute and is void. We note that costs such as fees for expert witnesses hired by a party and claimant's attorney fees, payment of which might be required by the arbitration clause of the policy, are distinguishable because they are normally associated with recovery in civil litigation between an injured party and an insured motorist, and would be assumed voluntarily.

The Superior Court order is reversed in the State Farm Mutual Automobile Insurance Company v. Hooks and Anderson case. The certified question in the Kenworthy case is answered in the affirmative.

UTTER, DORE, PEARSON, and SMITH, JJ., concur.

DOLLIVER, J. (dissenting)—The issue is not, as the majority states, whether an injured insured's recovery is reduced by an arbitration cost provision. Majority, at 314. Rather, the issue is whether the Legislature intended to factor the costs of recovery into the coverage or damages available to an injured party in a third party liability situation. While the UIM statute is construed broadly against the use of exclusionary and setoff clauses, neither the statute nor public policy justifies factoring the costs of recovery into the mandated coverage. Because I believe the majority's holding advances beyond the intent of the Legislature, I dissent.

Under the statute, the UIM coverage available to the injured insured must equal the coverage available to an injured party in a third party liability situation. RCW 48.22.030(3). The purpose of this statute is "'[T]o allow an injured party to recover those damages which would have been received had the responsible party maintained liability insurance.'" Majority, at 314 (quoting *Finney v. Farmers Ins. Co.*, 92 Wn.2d 748, 751, 600 P.2d 1272 (1979)). *See also Keenan v. Industrial Indem. Ins. Co.*, 108 Wn.2d 314, 320, 738 P.2d 270 (1987). Thus, the question is whether the damages received by an injured party in a liability situation are exclusive of the costs of recovery.

Expenses of litigation, such as costs and attorney fees, are not generally considered to be damages. *See Lincor Contractors, Ltd. v. Hyskell*, 39 Wn. App. 317, 324, 692 P.2d 903 (1984) (citing *State ex rel. Macri v. Bremerton*, 8 Wn.2d 93, 113–14, 111 P.2d 612 (1941)), *review denied*, 103 Wn.2d 1036 (1985). Coverage and expenses of litigation are also treated separately in insurance contracts. Generally, in a third party liability situation, the defense costs of the insured are paid by the insurer pursuant to its contractual duty to defend its insured. *See E–Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 726 P.2d 439 (1986); 7 Am. Jur. 2d *Automobile Insurance* § 389 (1980). Pursuant to this contractual duty to defend, the insurer pays the costs of defending the insured over and above the

policy's limit of liability coverage. These defense costs are not deducted from the available coverage under the policy, rather they are a separate expense of the insurer apart from the limit of coverage. Significantly, although the Hooks policy was not made a part of the record, the Kenworthy policy follows the general practice by not factoring costs into the policy's limit of liability coverage. The policy states, "*In addition to* our limit of liability, we will pay all defense costs we incur." (Italics mine.) While the insurer pays the defense costs of its insured, the injured party has the responsibility for paying the costs of recovery. These expenses are separate from the damages received from the insured's insurance carrier.

In the UIM situation where the injured party is also the insured, the distinction between costs of recovery and the mandated coverage can become blurred. However, because the purpose of the UIM statute has been interpreted to focus upon the damages received by the injured party from the insured in a third party liability context, the limit of the insured's liability coverage, which is the potential recovery of the third party in the liability situation, is the coverage amount with which the insured's UIM coverage must equate. The limit of the insured's liability coverage necessarily excludes expenses of litigation because the available coverage under the insured's policy in the liability context is not dependent upon the injured party's cost of recovery. In order to mirror this situation in the UIM context, the insured's costs of recovery cannot be factored into a determination of whether the coverage in the policies complies with RCW 48.22.030(3).

To illustrate, assume an insured has liability coverage of $10,000/$20,000. When a third party brings an action against the insured, the potential recovery of the injured party under the insurance policy is $10,000, the limit of the insured's liability coverage. Assuming the injured party's expenses of litigation were $3,000, the injured party will ultimately recoup $7,000 which reflects the $10,000 limit of coverage minus the expenses of litigation. However, the

available coverage, $10,000, does not increase or decrease dependent upon the injured party's expenses of litigation. The statute mandates that an insured's UIM coverage must equate with the coverage available to an injured party in the liability context. Therefore, when an insured is the injured party and brings an action against the insurer under a UIM provision, the available coverage must still be $10,000. The injured insured's costs of recovery in the UIM situation cannot be factored in without increasing the available coverage, $10,000 plus expenses, and putting the insured in a better position for having been struck by an underinsured motorist. *See Keenan,* at 321.

Costs of recovery are distinct from damages. There is simply no justification to interpret the mandated coverage in RCW 48.22.030(3) as factoring in the costs of recovery.

The majority states that allowing the arbitration cost provision would be the "very sort of 'erosion' and 'whittling away' of protection our cases prohibit." Majority, at 315. However, the cases cited by the majority for this proposition are concerned only with the erosion or whittling away of the available *coverage* either by exclusionary or setoff clauses. *See Touchette v. Northwestern Mut. Ins. Co.,* 80 Wn.2d 327, 335, 494 P.2d 479 (1972) ("[t]he legislative purpose . . . is not to be eroded or, as the cases say, whittled away by a myriad of legal niceties arising from *exclusionary clauses*") (italics mine); *Britton v. Safeco Ins. Co. of Am.,* 104 Wn.2d 518, 531, 707 P.2d 125 (1985) (disability benefits *setoff* restricts coverage mandated by UIM statute). The arbitration cost provision is not an exclusion or a setoff; it does not impermissibly reduce the amount of mandated coverage.

Without analyzing the distinction between coverage and costs of recovery, the majority assumes the Legislature intended coverage in the liability situation to mean coverage minus costs of recovery. However, even assuming for argument that coverage is so defined, the majority does not adequately distinguish the costs borne by the injured party in the liability context with the costs borne by the insured

in the UIM context. The "critical and controlling distinction" provided by the majority is that the costs in civil litigation are voluntarily assumed by the injured party in the liability context. Majority, at 315. However, the majority then states that these costs are voluntarily assumed even if "required by the arbitration clause of the policy" because they are "normally associated with recovery in civil litigation". Majority, at 315.

The critical distinction being made by the majority rests, then, upon the inherent differences between recovering in civil litigation and recovering through arbitration. This is a distinction without a difference. First, although it is not ordinarily done, an injured party and a fully insured tortfeasor could agree to arbitrate their dispute rather than proceed to trial. RCW 7.04.010. In this instance, the injured party would bear its share of the costs of the arbitration. In addition, the majority also assumes the payment of arbitrator fees would be over and above the costs associated with civil litigation. Majority, at 314. Because civil litigation and arbitration are two distinct procedures for settling disputes, the costs associated with each, while they may overlap, are necessarily different in kind. However, because arbitration is a less complex procedure, the costs incurred by arbitration will be less in most instances. In a case where the costs of arbitration are less than the costs of civil litigation, is the injured insured's recovery still "materially dilute[d]"? Majority, at 315.

The majority also argues that, under the insurer's argument, the policy could obligate the insured to "cover virtually any cost." Majority, at 315. While the prospect of this practice on the part of insurers may be distasteful, the policy decision to prevent this type of cost shifting is more properly left to the Legislature. Under the guise of interpretation, the majority is simply legislating. Because of the majority's discontent with the legislative enactment, it indulges its sense of what ought to be by rewriting the statute. As to the majority's reliance on *Nickla v. Industrial Fire & Cas. Ins. Co.*, 38 Ill. App. 3d 927, 349 N.E.2d

644 (1976), I would simply observe this court need not reinforce error regardless of the source, including an intermediate appellate court in Illinois.

I would answer the certified question from the United States District Court in the Kenworthy case in the negative. I would affirm the Superior Court's denial of plaintiff's motion in the State Farm Mutual Automobile Insurance Company v. Hooks and Anderson case to compel State Farm to pay all arbitrator fees.

CALLOW, C.J., and ANDERSEN and DURHAM, JJ., concur with DOLLIVER, J.

Reconsideration granted November 8, 1989. By an order dated February 22, 1990, the court adhered to its decision reversing the superior court order in *State Farm Mut. Auto. Ins. Co. v. Hooks*. The parties in *Kenworthy v. Pennsylvania Gen. Ins. Co.* settled before the motion for reconsideration was granted.